FIRST NATIONAL LIFE INSURANCE COMPANY, an Alabama Corporation, Plaintiff–Appellant,

v.

SUNSHINE–JR. FOOD STORES, INC., a Florida Corporation, Defendant–Appellee,

FIRST NATIONAL LIFE INSURANCE COMPANY, an Alabama Corporation, Plaintiff–Appellee,

v.

SUNSHINE–JR. FOOD STORES, INC., a Florida Corporation, Defendant–Appellant.

Nos. 90–7535, 90–7668.

United States Court of Appeals, Eleventh Circuit.

May 13, 1992.

---

Alvin T. Prestwood, Capouano, Wampold, Prestwood & Sansone, P.A., Montgomery, Ala., for First Nat. Life Ins. Co.

Charles A. Stewart, III, Robert W. Bradford, Jr., Hill, Hill, Carter, Cole & Black, P.C., Montgomery, Ala., for Sunshine–Jr. Stores, Inc.

Before ANDERSON, Circuit Judge, CLARK *, Senior Circuit Judge, and BROWN **, Senior District Judge.

WESLEY E. BROWN, Senior District Judge:

This suit concerns a group life and health insurance policy issued by First National Life Insurance Company ("FNL"). The policy was used to fund an employee welfare benefit plan established by Sunshine–Jr. Food Stores, Inc. ("Sunshine") to provide health benefits to its employees. The policy was in effect from August 1, 1983, until August 1, 1986. On this latter date, Sunshine terminated its policy with FNL and obtained coverage from another insurer. FNL subsequently filed this action asserting various state claims against Sunshine, including breach of contract and misrepresentation, as well as a claim for relief under the Employee Retirement Income Security Act, ("ERISA") 29 U.S.C. § 1001, et seq. The district court held that all of the state law claims asserted by FNL were preempted by ERISA. The ERISA claims were tried to the court. After hearing the evidence, the district court determined that FNL was not entitled to relief and entered judgment in favor of Sunshine. FNL appeals, raising several grounds for error.

*See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

*Facts*

Sunshine operates a chain of convenience stores. During the time period at issue here, Sunshine had about 2,000 employees. The company provided group health benefits to its employees through a fully insured plan. Eligible employees who wished to participate in the plan paid one-half of the premium for insurance benefits and Sunshine paid the other half. Prior to August of 1983, Sunshine provided benefits through a group policy with Aetna Insurance Company. In 1983, Sunshine began looking for another insurance carrier because of Aetna's rising premiums. The company contacted Frank Ayers, an insurance broker in Tallahassee, Florida. With Ayers' aid, Sunshine eventually chose FNL as insurer for its plan. The new group policy between these parties took effect on August 1, 1983.

Under the policy, FNL provided health, medical, and disability coverage to all employees of Sunshine who worked a minimum of 30 hours a week or a minimum of 1,000 hours each year. Sunshine bore the responsibility of enrolling all employees who were eligible to participate and wished to do so. The policy provided that Sunshine would enroll at least seventy-five percent of its eligible employees in the plan.

The policy did not expressly set forth the details of how the plan was to be administered. Nevertheless, the parties followed a relatively well-defined allocation of administrative responsibilities. For every billing period, Sunshine prepared a computer printout of its currently enrolled employees, calculated and collected the appropriate premiums, and forwarded a premium check along with the printout to Frank Ayers. Ayers and his employees in turn copied the printout and forwarded the materials to FNL. FNL deposited the premium check into its general assets accounts.

As to the claims process, employees or their health care providers typically submitted claims to Sunshine. The company

** Honorable Wesley E. Brown, Senior U.S. District Judge for the District of Kansas, sitting by designation.

would verify the employment status of the claimants and forward the claims to Ayers. Ayers would then check the accuracy of the claim and determine the appropriate rate under the policy. During the first year the policy was in effect, Ayers would send the claim to FNL, which would then issue a benefit check. In the later two years of the policy, FNL authorized Ayers to write benefit checks on its bank account. Ayers received a six percent commission from FNL on the Sunshine policy.

Sunshine ended its relationship with FNL in August of 1986, on the third anniversary of the policy. Again with Ayers' assistance, the company found a new insurer for its employee benefit plan. FNL later filed this suit. In addition to the claims asserted under state law, appellant sought monetary relief under ERISA based upon alleged breaches of the policy by Sunshine. The alleged breaches included the improper payment of benefits and the failure to maintain seventy-five percent employee participation in the plan.

*Issues on Appeal*

a. *Preemption*

■ The first issue raised by appellant FNL is whether the district court erred in finding that all of FNL's state law claims were preempted by ERISA. In its amended complaint, FNL alleged claims against Sunshine for breach of contract, breach of the duties of due care and good faith, willful and wanton conduct, misrepresentation, and an action under the Alabama Code for failure to disclose material facts. FNL apparently contends that these state claims should not be preempted because they do not "relate to" an employee benefit plan and are therefore outside the scope of ERISA's preemption clause. Appellant also suggests that the state law claims do not create a conflict with the purpose of the preemption provision. Finally, appellant argues that preemption is inappropriate because FNL has no adequate remedy under ERISA for the wrongs allegedly committed by the appellee.

We note initially that appellant does not challenge the district court's finding that the policy was part of an employee welfare benefit plan covered by ERISA. *See* 29 U.S.C. § 1002. *See also Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir.1982) (*en banc*). The district court found that the ERISA plan incorporated the terms of the group policy. R3–78–7. And, although Sunshine apparently had no formal written plan, the district court determined what the terms of the plan were at least in part from the course of dealing between FNL and Sunshine.

"In deciding whether a federal law preempts a state statute, our task is to ascertain Congress' intent in enacting the federal statute at issue." *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 95, 103 S.Ct. 2890, 2898, 77 L.Ed.2d 490 (1983). Under ERISA, Congress' intent is set forth expressly in the statutory language, which generally preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). The preemption provision is "deliberately expansive and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). The Supreme Court has consistently recognized the expansive sweep of the preemption clause. *Id.*

In *Amos v. Blue Cross–Blue Shield of Alabama,* 868 F.2d 430 (11th Cir.), *cert. denied,* 493 U.S. 855, 110 S.Ct. 158, 107 L.Ed.2d 116 (1989), this court addressed the question of whether certain state law claims arising out of an alleged wrongful denial of benefits under an employee welfare plan were preempted by § 1144(a). The plaintiff in *Amos* asserted common law causes of action for bad faith refusal to pay benefits, fraud, and breach of contract. We concluded that the claims were preempted, stating "there can be no dispute that the common law causes of action asserted by the plaintiffs ... 'relate to' an employee benefit plan and therefore fall within ERISA's express preemption clause." *Id.* at 431. *See also Phillips v. Amoco Oil Co.,* 799 F.2d 1464, 1469–70 (11th Cir.1986).

In the instant case, FNL seeks damages based on Sunshine's alleged mishandling of benefit payments and its alleged failure to adhere to terms of the group policy which were incorporated into the welfare benefit plan. We must reject the argument that these claims do not "relate to" the employee benefit plan. Congress used the words "relates to" in their broad sense and did not mean to preempt only state laws specifically designed to affect employee benefit plans. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). A state law relates to an employee benefit plan if it "has a connection with or reference to such a plan." *Id.* The claims asserted by FNL have an obvious connection with the plan in this case. They are founded upon Sunshine's alleged failure to adhere to its obligations under the group policy which funded Sunshine's welfare benefit plan. *Cf. Amos,* 868 F.2d at 430. The district court found that the plan incorporated the terms of the policy. These claims "relate to" the welfare benefit plan.

■ Appellant maintains that preemption is not appropriate because its state claims are consistent with the purposes behind ERISA and the preemption provision. FNL argues that preemption of state laws was designed to preserve consistency and to prevent the imposition of conflicting requirements in benefit plans. According to FNL, the maintenance of its claims against Sunshine does not conflict with any of the objectives of ERISA. But the preemption provision displaces all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements. *Mackey v. Lanier Collection Agency,* 486 U.S. 825, 829, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). Moreover, state contract and tort laws that impose varying standards upon the administrator of a welfare benefit plan create a significant potential for conflict with ERISA and thus are logically preempted. As we noted earlier, Congress deliberately wrote § 1144(a) in a broad manner in order to make pension plan regulation exclusively a federal concern.

■ Nor is the argument that ERISA provides an inadequate remedy a sufficient reason to overcome the application of § 1144(a). The question of preemption is a matter of congressional intent; it is not a question of which body of law—state or federal—offers more protection to an aggrieved party. *Phillips v. Amoco Oil Co.,* 799 F.2d 1464, 1470 (11th Cir.1986) ("To argue that Congress created a 'gap' in the law does not undermine the reasoning on which a finding of preemption is based."). The claims asserted here fall within the range of state laws that relate to an employee benefit plan. For these reasons, we find that the district court correctly held that the plaintiff's state law claims were preempted by ERISA.

### b. *Relief under ERISA*

■ FNL's next argument is that the district court erred in refusing to order Sunshine to render an accounting to FNL. FNL believes it is entitled to an accounting to determine if Sunshine complied with the insurance agreement. FNL contends that Sunshine stood in a fiduciary capacity as to FNL and is therefore obligated to render an accounting. Appellant also argues that an accounting is appropriate because the accounts at issue were mutual and complicated.

The district court concluded that although Sunshine was a fiduciary with respect to the plan, it was not a fiduciary with respect to FNL. FNL challenges this finding, contending that Sunshine's exclusive access to employee records rendered it a fiduciary with a duty to account to FNL. Clearly, the fiduciary duties outlined in ERISA are designed to protect the plan and its beneficiaries rather than those who administer the plan. *See e.g.,* 29 U.S.C. § 1002(21)(A) (defining "fiduciary" with respect to a plan). *See also* §§ 1104 and 1109. Appellant has not pointed to any ERISA provision that would impose a fiduciary duty upon Sunshine with respect to FNL. *Cf. Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 139, 105 S.Ct. 3085, 3089, 87 L.Ed.2d 96, 102 (1985) (Under § 1109(a), the relevant fiduciary rela-

tionship is one with respect to the plan.) Nor was the relationship between FNL and Sunshine such that Sunshine could be held accountable as a fiduciary. FNL entered into the policy with Sunshine as part of an arm's-length transaction. FNL was free to negotiate such terms as it thought necessary for its protection. It did not enter this transaction dependent on the whim of Sunshine; in fact, FNL drafted the policy that served as the basis of the welfare benefit plan. FNL's claims that it could not examine Sunshine's records are not sufficient to establish a fiduciary duty on the part of Sunshine to make an accounting. Moreover, as the district court noted, Sunshine's records were made available to FNL in the course of this suit. R3–78–21. In light of the fact that FNL had the opportunity to examine the records, it is not clear why it would be entitled to an order directing Sunshine to make an accounting. FNL has shown no circumstances to justify such an order. We find no error in the district court's refusal to order an accounting.

■ Appellant's next assertion of error relates to its claim for damages arising out of Sunshine's alleged failure to insure the minimum level of participation specified in the policy. Under the FNL policy, Sunshine promised to enroll seventy-five percent of all eligible employees in the plan. FNL argued that Sunshine's alleged failure to meet this requirement resulted in lost profits of approximately $234,000. The district court, after hearing the evidence, denied relief on this claim for two reasons. First, the court concluded that the contract between the parties specified that the only remedy for a breach of this duty was for FNL to terminate the policy. Second, the court found that FNL failed to prove any damages from the alleged breach. FNL disputes both of these findings. We need not address the first finding by the district court because we conclude that the second finding is dispositive of appellant's allegation of error on its "seventy-five percent" claim.

Appellant's calculation of lost profits was based on an assumption that if additional Sunshine employees had been enrolled in the plan, the claims asserted by those employees would have amounted to seventy-five percent of the additional premiums that would have been generated. The district court found FNL's estimate was "entirely too speculative a basis on which to award relief." R3–78–14. The court observed that FNL "did not support its assertion that it would have enjoyed a 75% ratio of claims to premium income with any persuasive evidence" and characterized FNL's profit estimates as "implausibly rosy." *Id.* By way of argument, FNL asserts the familiar rule that lost profits should not be denied simply because the amount of damages is difficult to ascertain. This rule is most often invoked when the difficulty in determining the amount of damages is a result of the defendant's wrongdoing. *See e.g., Anderson v. Mt. Clemens Pottery Company,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). The rule is of no benefit, however, where the complaining party fails to prove that the defendant's conduct caused some injury. *Id.* at 688, 66 S.Ct. at 1192. In the instant case, the district court found that FNL "did not prove that this alleged violation of the plan caused it any harm." R3–78–13. This finding is a determination of fact that we will reverse only if it is clearly erroneous. Fed.R.Civ.P. 52(a). In this instance the district court was not clearly erroneous. There was evidence presented from which the court could have reasonably concluded that increased participation by Sunshine employees would not have resulted in any profit to FNL. The court may have found persuasive the evidence suggesting that FNL's group policies were operating at a loss. Sunshine introduced evidence tending to show that FNL's average loss ratio on group policies was much higher than FNL estimated—high enough that FNL might have lost money on such groups. The court noted that the years covered by this suit were considered peak bad years for health care insurers and that FNL in large part left the group health insurance field shortly after this incident. In addition, FNL's witnesses acknowledged that they could not state with any reasonable certainty what the loss ratio would have been if the additional Sun-

shine employees had been enrolled in the plan. Considered as a whole, the record supports the district court's finding. FNL had the burden of demonstrating that it suffered damages from the alleged breach by Sunshine.

### c. *Agency*

■ Part of FNL's claim was that Frank Ayers, an insurance agent, made improper overpayments to beneficiaries of the plan. FNL argued in the district court that Sunshine was liable for these overpayments because Ayers was acting as the agent of Sunshine when he paid the claims. The trial court, however, found that "either Ayers acted independently in processing claims or he acted as First National's agent in this function." R3–78–16. The court further stated that "First National, not Sunshine Jr., monitored and supervised Ayers in processing claims...." *Id.* Appellant believes these findings are erroneous.

As appellant recognizes, the district court's determination of this issue is subject to review under the clearly erroneous standard. We will not reverse "if the district court's account of the evidence is plausible in light of the record viewed in its entirety...." *Anderson v. Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). In light of this standard we have little trouble affirming the finding of the district court. Evidence was presented at trial which suggested that Ayers processed claims on behalf of and under the supervision of FNL. *See e.g.*, R.Vol. VII at 230–32. If Ayers had not processed the claims, FNL would have performed that task itself. *Id.* Pursuant to an agreement between Ayers and FNL, Ayers received a six per cent commission from FNL as compensation for his work. FNL authorized Ayers to sign checks on the FNL account to make benefit payments. Taken as a whole, the evidence supports a conclusion that Ayers processed the claims as the agent of FNL. *See* Restatement (Second) of Agency § 1 ("Agency is the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.").

### d. *Benefits paid to ineligible employees*

■ Appellant also sought damages from Sunshine under 29 U.S.C. § 1132(a)(3) for benefits paid to Sunshine employees who were not eligible under the health insurance plan. Pursuant to the course of dealing between FNL and Sunshine, Sunshine bore the responsibility for verifying the employment status of claimants. FNL alleges that it paid over $40,000 to three claimants who were erroneously certified by Sunshine as eligible employees. FNL asked the court to award it compensatory damages for Sunshine's failure to insure proper certification of these employees. The district court held that even if Sunshine violated the terms of the plan, FNL was not entitled to any damages therefrom because such relief was not equitable in nature and was not authorized by § 1132(a)(3).

Section 1132(a)(3) authorizes a civil action to be brought:

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

The scope of the phrase "other appropriate equitable relief" has caused the courts some difficulty. In *Bishop v. Osborn Transportation, Inc.*, 838 F.2d 1173 (11th Cir.1988), we held that a beneficiary could not obtain punitive damages under § 1132(a)(3). In so holding, we relied on the Supreme Court's observation in *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96, 106 (1985) that:

> the six carefully-integrated civil enforcement provisions found in section [1132] ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly. The assumption of inad-

vertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a 'comprehensive and reticulated statute.'

We also noted that the civil enforcement provisions of § 1132(a) focus heavily on the beneficiary's right to enforce the terms of the plan and do not mention the recovery of extra-contractual damages. *Bishop*, 838 F.2d at 1174. We concluded that punitive damages did not come within the remedies authorized by § 1132(a)(3), stating: "Punitive damages are just that, damages, and are not ordinarily incorporated by the term 'equitable relief.'" *Id. (citing Sokol v. Bernstein*, 803 F.2d 532, 537–38 (9th Cir. 1986)). In *Sokol*, the court declared that "it appears Congress used the word 'equitable' to mean what it usually means—injunctive or declaratory relief." Although this latter declaration may be somewhat over-restrictive, we cannot ignore the fact that the statute limits the relief available to equitable relief. Despite this, FNL has cast its claim as one for legal relief and argues that it is entitled to an award of compensatory damages for breach of the plan's terms. We must reject FNL's argument that the phrase "equitable relief" in § 1132(a)(3) authorizes an award of compensatory damages.[1] The omission of any mention of a right to legal remedies in § 1132(a)(3) must be taken as an indication of Congress' intent to limit the relief available under this section to that which is equitable in nature. *Cf. Bishop*, 838 F.2d at 1174 (Congress appreciated the distinction between legal and equitable remedies; the restriction of § 1132(a)(3)(B) to equitable relief shows that Congress did not intend to allow the recovery of punitive damages under § 1132(a)).

■ Restitution is an equitable remedy designed to restore to a plaintiff something of value that is wrongfully in the possession of another. *See* Restatement of Restitution (Second) § 1 ("A person who has been unjustly enriched at the expense of another is required to make restitution to the other.") Section 1132(a)(3) undoubtedly authorizes a fiduciary in certain circumstances to bring an action for restitution to recover benefits mistakenly paid out. *See Blue Cross and Blue Shield of Alabama v. Weitz*, 913 F.2d 1544, 1549 (11th Cir. 1990). In *Weitz*, we found that a fiduciary of an ERISA plan could maintain an action for restitution under § 1132(a)(3) against a physician to whom payments were made in violation of the plan.

FNL argued in the district court that it was entitled to an award of restitution from Sunshine. The district court found that restitution was inappropriate, however, because the alleged overpayments did not go to Sunshine but instead went to beneficiaries or to health care providers. The court noted that FNL might have a claim for restitution against these third parties, *cf. Weitz, supra*, but concluded that FNL did not have a claim for restitution against Sunshine. Appellant has not argued on appeal that the district court's application of this principle of restitution was incorrect and we find no error in the court's ruling. We therefore affirm the district court's ruling on this issue.

### No. 90–7668

■ In a cross-appeal, Sunshine contends that the district court erred by refusing to award Sunshine attorneys' fees. This issue is governed by 29 U.S.C. § 1132(g)(1), which provides in part: "In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." Sunshine contends that the district court abused its discretion in denying attorneys' fees because the suit by FNL had no basis under law. The district

---

1. We express no opinion as to whether a party in appellant's position might be entitled to some other relief under § 1132(a)(3) or relief under other ERISA provisions. For example, as Judge Clark points out in his concurring opinion, we do not have before us the issue of an insurance company seeking its premiums. Similarly, we are not called on to decide if ERISA enables a party such as FNL to recover on its own behalf rather than on behalf of a welfare benefit plan. We have addressed only those claims asserted by FNL on appeal.

court specifically found, however, that FNL was not acting in bad faith in bringing the suit and that the lawsuit presented difficult and close questions of law. After weighing all of the factors, the district court determined that an award of fees was not warranted. This scenario does not show an abuse of discretion. The district court considered appropriate factors in determining whether attorney's fees should be assessed and the conclusion reached was well within the broad range of discretion afforded to the trial judge.

### Conclusion

The judgment of the district court is AFFIRMED.

CLARK, Senior Circuit Judge, specially concurring:

I concur in the result in this case but am troubled by some inferences in the opinion. This case exemplifies a type of ERISA case we are seeing more often—the entire plan consists of an insurance policy. I agree with the majority that we have to look to 29 U.S.C. § 1132(a)(3), which is quoted on page 1552 of the majority opinion. That subsection authorizes the plaintiff insurance company, a fiduciary, to bring a civil action to obtain relief. The majority states on page 2421: "Appellant has not pointed to any ERISA provision that would impose a fiduciary duty upon Sunshine with respect to FNL." Further, on page 2424, the majority states: "We must reject FNL's argument that the phrase 'equitable relief' in § 1132(a)(3) authorizes an award of compensatory damages."

I can find no cases similar to this one, but my study of the statute leads me to conclude that a plaintiff situated as FNL here can collect compensatory damages under certain circumstances. I repeat that I concur in the result in this case because FNL failed to make out a case. Nevertheless, it is my view that an employer who secures a medical insurance policy on its employees becomes a co-fiduciary pursuant to § 1002(21)(A)(i):

(21)(A) Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,.... Such term includes any person designated under section 1105(c)(1)(B) of this title.

This conclusion finds support in the definitions of "plan sponsor" and "administrator" in § 1002.

Section 1132(a)(3) permits an insurance company/fiduciary to obtain an accounting from an employer/co-fiduciary that is necessary to allow the insurance company to properly administer the plan. This action would include requiring the employer to furnish the names of all employees, dates of employment, and other data necessary to insure coverage and payment of premiums by the employer for such coverage. Similarly, I conclude that sub-part (ii) of this section—"to enforce any provision of this subchapter of the terms of the plan"—permits the insurance company to bring an action for premiums owed for insurance coverage provided under the plan, even though such relief might not be strictly classified as "equitable."

Any other interpretation of the statute would frustrate the intention of the statute to include medical insurance plans within the provisions of ERISA. Insurance companies would be reluctant to engage in writing such policies if their rights to collect premiums were limited first by an interpretation that ERISA preempts all claims by such companies against employers, and then by an interpretation of ERISA that would limit such claims only to equitable claims and provide relief only for those who are beneficiaries of such plans. I am inclined to agree with the majority that ERISA preempts such an action, but I read § 1132(a)(3) broadly enough to require district courts to enforce all rights an insurance company has against an employer that stem from the policy and the relationship of the parties in administering the plan.