**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND, Plaintiff–Appellant,**

v.

**NEUROBEHAVIORAL ASSOCIATES, P.A., Defendant–Appellee.**

No. 94–3277.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 9, 1995.

Decided April 18, 1995.

Thomas C. Nyhan, Cent. States, Southeast & Southwest Areas Pension Fund Law Dept., Rosemont, IL, James D. O'Connell and William W. Leathem (argued), Cent. States, Southeast and Southwest Areas Health and Welfare Fund, Des Plaines, IL, for plaintiff-appellant.

John Cassidy, Neurobehavioral Associates, P.A., Houston, TX, for defendant-appellee.

Before BAUER and COFFEY, Circuit Judges, and CRABB, District Judge.*

BAUER, Circuit Judge.

Presented for our review in this case is the question of whether an action which seeks to

---

\* The Honorable Barbara B. Crabb, Chief Judge of the United States District Court for the Western District of Wisconsin, is sitting by designation.

recover an overpayment of benefits under a multiemployer benefits plan falls under the auspices of the Employee Retirement Income Security Act of 1974 (ERISA). 29 U.S.C. § 1001 et seq. In his capacity as trustee of the Central States, Southeast and Southwest Areas Health and Welfare Fund ("Central States"), Howard McDougall brought this action on behalf of Central States to recover a mistaken overpayment which it made to Neurobehavioral Associates for the medical treatment of one of its members. Finding that the action did not fall under ERISA, the district court held that it lacked subject-matter jurisdiction over the suit. Because we believe that ERISA's civil enforcement scheme authorizes Central States' claim, we reverse.

Central States provided medical coverage to Fred Piert and his daughter Tammy. On September 14, 1992, Tammy Piert received medical treatment from Neurobehavioral for which Neurobehavioral submitted to Central States a claim for $100.00. A clerical error in Central States' processing of the claim resulted in payment to Neurobehavioral for $10,000. Upon discovering the error, Central States requested that Neurobehavioral return the $9,900 excess payment.[1] Neurobehavioral refused.

In an effort to recover the overpayment, Central States brought an action with jurisdiction and relief predicated upon ERISA's civil enforcement provision, section 502(a)(3). 29 U.S.C. § 1132(a)(3). Alternatively, Central States contended that jurisdiction could rest on ERISA's federal common law.

Section 502(a)(3) states in relevant part: a civil action may be brought—

by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

Federal courts have exclusive jurisdiction over actions brought pursuant to this provision. 29 U.S.C. § 1132(e).

The district court held that because the matter could be resolved without any substantive interpretation of ERISA, Central States could not rely on ERISA to establish subject-matter jurisdiction. Noting the absence of any cognizable effect this action might have on plan participants or beneficiaries, the court also questioned the existence of any federal concern stating, "[r]ather than involving the sound and equitable administration of an employee benefit plan, this dispute involves only the fiduciary's interest in collecting a debt from a third-party." Framed in this manner, the court concluded that the case presented a straightforward state law claim.

We believe that the district court's construction of section 502(a)(3) is overly restrictive. Nothing in the provision suggests that a plaintiff must demonstrate that his claim contains a sufficiently federal flavor as a predicate to jurisdiction. Central States' lawsuit falls easily within the language of subsection (B). That it is brought by an ERISA fiduciary is undisputed, and it is an action seeking equitable relief (restitution) which seeks both to redress a violation of the plan and to enforce the recovery of the overpayments portion of its plan.[2] Additionally, the court's characterization of Neurobehavioral as a third party is misleading. ERISA defines the term beneficiary as "a person designated by a participant ... who is or may become entitled to a benefit" under a plan. 29 U.S.C. § 1002(8). A medical care provider who receives benefits from the fund at the behest of a participant is a beneficiary. *Kennedy v. Connecticut General Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir.1991). Hence, according to the terms of the statute, this

---

1. Central States has offset $289.00 in subsequent benefits payable to Neurobehavioral on Tammy Piert's behalf against the overpayment with the result that the claim is now for $9,611.00.

2. The action seeks to enforce Article XI, Section 11.04 of Central States' contract which reads:

Whenever this Plan has made benefit payments exceeding the amount of benefits payable under the terms of this Plan, the Fund shall have the right to recover the excess payments from any responsible person or entity, including the right to deduct the amount of excess payment from any subsequent payable benefits.

dispute is between a fiduciary and a beneficiary; a relationship which is of primary concern under ERISA.

Our recent decision in *Health Cost Controls v. Skinner*, 44 F.3d 535 (7th Cir.1995), touched on the interplay between ERISA's jurisdictional scope and a claim for wrongfully-paid benefits. In that case, an ERISA fund, pursuant to a provision in its contract, had sought reimbursement for funds it had advanced to an injured participant but which the participant had subsequently recovered in an action against the tortfeasor. *Id.* at 536. Because the complaint requested "money damages," the district court dismissed the case *sua sponte* for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

We reversed primarily on procedural grounds. A standard rule in considering jurisdictional challenges is that when the court's jurisdiction and the claim for relief are predicated on the same federal statute but the basis for relief is subsequently found to be inapplicable, the district court should not dismiss the case under Rule 12(b)(1), but rather proceed as if jurisdiction exists and determine the merits of the claim under Rule 12(b)(6). *Id.* at 537. Consequently, even though the plaintiff had erred in requesting damages for relief, the court erred in relying on that request in evaluating jurisdiction. Because the claim in fact sought restitution, undoubtedly an equitable action, *Mertens v. Hewitt Assocs.*, —— U.S. ——, ——, 113 S.Ct. 2063, 2068, 124 L.Ed.2d 161 (1993), and was brought to enforce a term in the contract, we held that the plaintiff had established jurisdiction, and we remanded the case to allow the plaintiff to amend its claim for relief and to allow the district court to make a determination on the merits under Rule 12(b)(6). *Skinner*, 44 F.3d at 537. Although the issue was not squarely addressed, *Skinner* nevertheless suggests that a federal court has jurisdiction over an action seeking restitution of wrongfully-paid ERISA benefits under section 502(a)(3).

Reinforcing this conclusion is our belief that Central States could not pursue this action in state court because a state law claim would be preempted by ERISA. Section 514(a) states that ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered under ERISA. 29 U.S.C. § 1144. The structure and legislative history indicate that the words "relate to" are intended to apply in their broadest sense. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). ERISA preemption is, therefore, not limited to displacement of state laws affecting employee benefit plans, *id.*, but rather extends to any state cause of action that has a "connection or reference to" an ERISA plan. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). In fact, Congress considered the breadth of preemption to be comparable to section 301 of the National Labor Relations Act which supersedes "all state actions for violation of contracts between an employer and a labor organization." *Dedeaux*, 481 U.S. at 55, 107 S.Ct. at 1557. And as in the labor relations context, Congress anticipated "that a federal common law of rights and obligations under ERISA-regulated plans would develop," *id.* at 56, 107 S.Ct. at 1557, and would " 'effectuate the statutory pattern enacted in the large by Congress.' " *UIU Severance Pay Trust Fund v. Local Union No. 18–U*, 998 F.2d 509, 512 n. 10 (7th Cir. 1993) (citations omitted). Consequently, even if a cause of action does not stem directly from a provision in ERISA, a plaintiff may still establish federal jurisdiction under the general federal question statute if the court decides that the claim is related to the policies and concerns underlying ERISA. *Id.* at 512.

Several courts, having been asked to determine whether federal jurisdiction extends to mistaken ERISA payments, have held that ERISA preempts traditional state law claims including claims for restitution. In *Kentucky Laborers Dist. Council Health and Welfare Fund v. Hope*, 861 F.2d 1003, 1005 (6th Cir.1988), the Sixth Circuit specifically rejected the argument (advanced by Neurobehavioral here) that preemption did not apply in cases in which interpretation of the plan was minimal. The court noted the impracticability of requiring courts to predict, based

solely on the pleadings, the level of ERISA interpretation warranted in any particular case. The court determined that Congress' intent in creating a uniform source of employee benefits law demanded that the plaintiff's action for restitution of ERISA benefits be resolved in a federal forum. *Id.* at 1005.

Even more persuasive is the Eleventh Circuit's holding in *Blue Cross & Blue Shield of Alabama v. Weitz,* 913 F.2d 1544 (11th Cir. 1990), in which an ERISA fund sought restitution under section 502(a)(3) for a mistaken payment made to an unauthorized health care worker. The court held that " 'an equitable action to recover benefits erroneously paid ... falls within the clear grant of jurisdiction contained in 29 U.S.C. § 1132(a)(3).' " *Id.* at 1549 (citations omitted); *see also First Nat'l Life Ins. Co. v. Sunshine–Jr. Food Stores, Inc.,* 960 F.2d 1546, 1549 (11th Cir. 1992) (holding that ERISA preempts state law claims against an employer alleging an improper payment of benefits), *cert. denied,* —— U.S. ——, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993); *Kwatcher v. Massachusetts Serv. Employees Pension Fund,* 879 F.2d 957, 966 (1st Cir.1989) (holding that ERISA preempted a state law restitution claim); *Plucinski v. I.A.M. Nat'l Pension Fund,* 875 F.2d 1052, 1057–58 (3d Cir.1989) (same); *Whitworth Bros. Storage Co. v. Central States, Southeast & Southwest Areas Pension Fund,* 794 F.2d 221 (6th Cir.) (same), *cert. denied,* 479 U.S. 1007, 107 S.Ct. 645, 93 L.Ed.2d 701 (1986).

Finally, in *Provident Life & Accident Ins., Co. v. Waller,* 906 F.2d 985 (4th Cir.), *cert. denied,* 498 U.S. 982, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990), the Fourth Circuit concluded that an insurer's right to recover mistaken payments to a beneficiary was in fact essential to ERISA's purposes, and that preemption was therefore appropriate. In support of its conclusion, the court pointed to section 403(c)(2)(A), which permits employers to recover mistaken payments from ERISA insurers. 29 U.S.C. § 1103(c)(2)(A). The court reasoned that embedded in this provision was an acknowledgement that plan funds should be administered equitably and that no party should unjustly profit. *Id.* at 993. Consequently, it was held appropriate

to resolve the plaintiff's unjust enrichment claim in federal court.

The opinion in *Waller* calls into question the district court's assumption that this case did not involve the "sound and equitable administration of an employee benefit plan." As we have stated, "[f]orcing trustees of a plan to pay benefits which are not part of the written terms of the program disrupts the actuarial balance of the Plan and potentially jeopardizes the pension rights of others legitimately entitled to receive them." *Cummings v. Briggs & Stratton Retirement Plan,* 797 F.2d 383, 389 (7th Cir.1986). Although "suits by fiduciaries against third parties wrongfully in receipt of payments are not at the heart of Congressional purpose in passing ERISA, neither do they contravene it. On the contrary, it could be argued that allowing such suits would tend to preserve the integrity of ERISA-governed funds, which is consonant with the central goals of ERISA." *Blue Cross & Blue Shield of Alabama v. Weitz,* 913 F.2d 1544, 1548 (11th Cir.1990) (citations omitted). Pension funds which are unable to recover mistaken payments may be less inclined to sponsor ERISA-qualifying plans. *UIU Severance Pay Trust Fund v. Local Union No. 18–U,* 998 F.2d 509, 513 (7th Cir.1993). Plainly then, the inequitable distribution of ERISA funds implicates more than just the interests of the payor and the payee.

ERISA's broad preemptive sweep and the reasons behind it have obvious implications for Central States' claim. No matter how straightforward a claim may, at first glance, appear, Congress' desire to provide uniformity in this area would be undermined were we to allow claims to be brought in state court based on a preliminary determination of their federal worth. More importantly, the soundness of employee benefit funds and the equitable distribution of benefits are fundamental ERISA concerns and are both involved in this case. We therefore believe that Central States' claim is sufficiently related to ERISA such that a state law claim for restitution would be preempted.

Simply put, the district court's holding in this case rests on an overly narrow construction of ERISA. It provides for less than

176

that contained in the plain language of the statute; ERISA's enforcement provisions are unambiguous. A plan trustee is entitled to a federal forum for purposes of seeking an equitable remedy in connection with its administration of the plan. Because Central States' claim falls squarely within the ambit of this provision, it was improper for the district court to dismiss this case for lack of subject-matter jurisdiction.

We understand the district court judge's caution in this matter. Federal courts possess limited jurisdiction, and we scrutinize diligently efforts to broaden that scope. Nevertheless, Congress has determined that actions affecting welfare and pension plans implicate exclusively federal concerns. Accordingly, we reverse the decision of the district court and remand the matter for further proceedings consistent with this opinion.