In the
United States Court of Appeals
For the Seventh Circuit

Nos. 98-3137 & 98-3248

TRUSTMARK LIFE INSURANCE COMPANY,
f/k/a BENEFIT TRUST LIFE INSURANCE COMPANY,

Plaintiff-Appellee/Cross-Appellant,

v.

THE UNIVERSITY OF CHICAGO HOSPITALS,

Defendant-Appellant/Cross-Appellee.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 94 C 4692--David H. Coar, Judge.

Argued September 30, 1999--Decided March 20, 2000

Before HARLINGTON WOOD, JR., COFFEY, and EVANS,
Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge. Trustmark
Life Insurance Company ("Trustmark"), formerly
known as Benefit Trust Life Insurance Company,
brought an action under the Employee Retirement
Income Security Act, 29 U.S.C. sec. 1001, et seq.
("ERISA"), against the University of Chicago
Hospitals & Health System ("UCH") to recover
payment made for breast cancer treatment of Grace
Fuja, one of Trustmark's insureds. On July 24,
1998, the district court entered final judgment
in favor of Trustmark as to recovery and denied
UCH's state-law defenses as preempted under
ERISA. UCH appealed and Trustmark cross-appealed
the district court's denial of attorney's fees,
costs, and prejudgment interest. We reverse.

I. BACKGROUND

Mrs. Fuja was a participant in an ERISA-
governed employee welfare benefit plan (the
"Plan") sponsored by her employer Emsco
Management Services, Inc. and insured by Benefit
Trust Life Insurance Company, now known as
Trustmark Life Insurance Company. As a breast
cancer patient who had not responded to standard
treatment, Mrs. Fuja sought high dose
chemotherapy with autologous bone marrow
transplant ("HDC/ABMT") treatment. Trustmark

denied precertification for HDC/ABMT treatment, claiming it was not "medically necessary" as defined under the Plan. Mrs. Fuja sought injunctive relief against Trustmark's refusal to cover the HDC/ABMT treatment, and on December 22, 1992, the district court in that case enjoined Trustmark from denying coverage. See Fuja v. Benefit Trust Life Ins. Co., 809 F. Supp. 1333 (N.D. Ill. 1992), rev'd, 18 F.3d 1405 (7th Cir. 1994). On or about December 29, 1992, in a telephone conference, a Trustmark executive stated that Trustmark would comply with the court order, precertification would not be necessary, and Trustmark would pay for the treatment, without specifying any conditions or that payment would be subject to appeal. In a follow-up letter sent to UCH that same day, Trustmark confirmed those statements, specifying that "Benefit Trust Life Insurance Company will comply with the court's order" and treatment would be paid under Plan benefits, again without attaching any conditions to the payment, which allowed for a $250.00 yearly deductible, 70% of the next $5,000.00, and 100% thereafter for each calendar year.

In addition, after receiving notice from Mrs. Fuja that she might not be able to pay her deductible and copayment obligations, UCH decided to waive Mrs. Fuja's deductible and copay. Prior to entering the hospital for treatment on January 7, 1993, Mrs. Fuja signed an Admission and Out-Patient Agreement with an Authorization and Release of Benefits clause which stated that Mrs. Fuja would be financially responsible for the balance owed if her insurance did not pay the full amount due, which amount might include the costs of collection and/or reasonable attorney's fees.

Less than a month after its unconditional statement of payment, on January 20, 1993, Trustmark filed its notice of appeal. During this period, Mrs. Fuja remained hospitalized until her death in March 1993. Shortly thereafter, Trustmark paid the sum of $362,232.97 to UCH for Mrs. Fuja's treatment, again without specifying any conditions. Nearly a year later, on March 18, 1994, this court reversed the district court's judgment, holding that Mrs. Fuja's HDC/ABMT treatment did not fall within the parameters of "medically necessary" procedures as defined in the Plan policy because the treatment was "furnished in connection with medical . . . research." Fuja v. Benefit Trust Life Ins. Co., 18 F.3d 1405, 1410 (7th Cir. 1994).

Trustmark subsequently filed an action in district court pursuing recovery of the amount paid to UCH for Mrs. Fuja's HDC/ABMT treatment

under sec. 502(a)(3)./1 The district court granted summary judgment in favor of Trustmark, finding a violation of the Plan under ERISA sec. 1132 (a)(3) because this court had already determined that Trustmark was not required to pay for the treatment under the Plan. The district court ordered UCH to reimburse the full amount to Trustmark. UCH appealed the summary judgment finding and Trustmark cross-appealed from the district court's denial of attorney's fees, costs, and prejudgment interest.

As there are no disputes as to the issues of material facts, summary judgment is appropriate in this case. However, for the reasons set forth below, we reverse the judgment of the district court in favor of Trustmark. We affirm the denial of attorney's fees, costs, and prejudgment interest.

II. ANALYSIS
A. Subject Matter Jurisdiction

Before reviewing the merits of Trustmark's claim, we must first decide whether it was properly before the district court. ERISA regulates both employee pension plans and employee welfare benefit plans. 29 U.S.C. sec.sec. 1002(3) & 1003(a). Participants, beneficiaries or fiduciaries of these plans (and the Secretary of Labor) may sue under ERISA. 29 U.S.C. sec. 1132(a). In Central States, Southeast and Southwest Areas Health & Welf. Fund v. Neurobehavioral Assocs., 53 F.3d 172, 173 (7th Cir. 1995) (hereinafter "Neurobehavioral Assocs."), a welfare fund brought an action under sec. 502(a)(3) to recover a mistaken overpayment made to a medical care provider for the medical treatment of one of its members. The court found that the claim fell directly within sec. 502(a)(3) of ERISA's civil enforcement provision. Id. at 176. The panel stated, "A medical care provider who receives benefits from the fund at the behest of a participant is a beneficiary." Id. at 173 (citation omitted). A dispute over restitution, "undoubtedly an equitable action," id. at 174 (citation omitted), "between a fiduciary [the fund plan] and a beneficiary [a medical care provider] . . . is of primary concern under ERISA."/2 Id. "Forcing trustees of a plan to pay benefits which are not part of the written terms of the program disrupts the actuarial balance of the Plan and potentially jeopardizes the pension rights of others legitimately entitled to receive them." Id. (quoting Cummings v. Briggs & Stratton Retirement Plan, 797 F.2d 383, 389 (7th Cir. 1986)). The court noted in Neurobehavioral Assocs. that the state law claim made by the trustees of the plan would be preempted by ERISA. Id. at 175.

Like Neurobehavioral Assocs., UCH is a medical care provider who received benefits from a welfare fund at the behest of a Plan participant, Mrs. Fuja, and is therefore recognized as a beneficiary. Mrs. Fuja sued the Plan in order to have those benefits paid. Fuja, 809 F. Supp. at 1342-43. This circuit then determined that the payment of those benefits was not authorized by the Plan. Fuja, 18 F.3d at 1412. The conclusion was that the Plan language unambiguously excluded coverage for any treatment "in connection with medical or other research." Id. Therefore, subject matter jurisdiction was proper under ERISA.

## B. Common Law Defenses

Although we have determined that Trustmark's action for recovery of ERISA benefits should be resolved in a federal forum, we must next determine the validity of UCH's defenses based on common law principles. UCH argues the defenses of breach of contract and promissory estoppel. We will review each claim in order to determine whether such common law principles are applicable under ERISA. We note, given the particular circumstances, that the law of the case doctrine does not foreclose consideration of these issues.

This circuit has already determined that all common law concepts are not automatically inapplicable in the ERISA context. Thomason v. Aetna Life Ins. Co., 9 F.3d 645, 647 (7th Cir. 1993). In passing ERISA, Congress expected that "a federal common law of rights and obligations under ERISA-regulated plans would develop." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56 (1987). Courts may develop a federal common law where ERISA itself "does not expressly address the issue . . . ." Thomason, 9 F.3d at 647 (citation omitted). State common law may be used as a basis in constructing a federal common law that implements the policies underlying ERISA where it is not inconsistent with congressional policy concerns. Id. (citations omitted).

### 1. Breach of Contract

UCH's primary argument is that the letter from Trustmark promising payment constitutes a private contract which bypasses the Plan. After careful scrutiny of the district court record, we find that UCH has waived this argument as it was not raised at the district court level. See Mouton v. Vigo County, 150 F.3d 801, 803 (7th Cir. 1998) (citations omitted). Although UCH repeatedly discussed the contractual arrangements between

Mrs. Fuja and itself (as pertaining to the deductible and copayment waiver), there was never any assertion or discussion that the statements or letter created an independent contractual arrangement, implied or explicit, between UCH and Trustmark. Throughout the district court proceedings, UCH described itself as an independent third party who provided the HDC/ABMT treatment at the direct behest of Mrs. Fuja. UCH repeatedly insisted it had no knowledge of the dispute between Mrs. Fuja and Trustmark. UCH did assert on several occasions that it had relied upon Trustmark's promise to pay, but did not, at any time, describe that promise as creating an independent contractual agreement nor did UCH argue there was an implied contract. UCH also failed to present a breach of contract argument at any point. However, even if UCH had preserved this issue, we find it would fail.

This circuit refused to recognize a breach of contract claim in an ERISA setting. See Buckley Dement, Inc. v. Travelers Plan Administrator of Illinois, Inc., 39 F.3d 784, 789-90 (7th Cir. 1994). We are also reluctant to create a cause of action which supersedes the civil enforcement provisions already enumerated in 29 U.S.C. sec. 1132(a), noting that the Supreme Court has made it clear that those detailed enforcement provisions provide "strong evidence that Congress did not intend to authorize other remedies." Mertens v. Hewitt Assocs., 508 U.S. 248, 254 (1993) (citation omitted). The panel in Neurobehavioral Assocs. found that a welfare fund action to recover a mistaken overpayment made to a medical care provider may not be characterized as a dispute involving only the fiduciary's interest in collecting a debt from a third party. 53 F.3d at 173. "ERISA preemption is . . . not limited to displacement of state laws affecting employee benefit plans, . . . but rather extends to any state cause of action that has a 'connection or reference to' an ERISA plan." Id. (citing Pilot Life Ins. Co., 481 U.S. at 47).
In its breach of contract argument, UCH characterizes itself as a third party who received payment after entering into an independent contract with the fiduciary. Neurobehavioral Assocs. refused to acknowledge this type of claim involving a medical care provider who had been directed by the insured as an assignee in receiving plan benefits. 53 F.3d at 173.

UCH relies on The Meadows v. Employers Health Ins. Corp., 47 F.3d 1006 (9th Cir. 1995), to argue that ERISA does not preempt a health care provider's state claims for breach of contract, estoppel, and negligent misrepresentation arising out of an insurer's alleged misrepresentation

concerning whether patients were covered by the insurer's policy. In The Meadows, the Ninth Circuit found that the insurer had made mistaken assurances of coverage. Id. This case and several others UCH relies upon, all from other circuits, are based upon mistaken assurances of coverage. See In Home Health, Inc. v. Prudential Ins. Co., 101 F.3d 600 (8th Cir. 1996); Lordmann Enters., Inc. v. Equicor, Inc., 32 F.3d 1529 (11th Cir. 1994); Hospice of Metro Denver, Inc. v. Group Health Ins., Inc., 944 F.2d 752 (10th Cir. 1991); Memorial Hosp. Sys. v. Northbrook Life Ins. Co., 904 F.2d 236 (5th Cir. 1990). The Meadows, In Home Health, Lordmann, Hospice of Metro Denver, and Memorial Hospital System are all distinguished from the present case in that they were state law claims brought in state court by the medical care providers who had never been paid after receiving repeated assurances of coverage by the insurer. After being removed to the district court by the defendants, these cases were all dismissed in federal court and remanded to the state courts. In addition, these cases are distinguished from the present case in that there was no mistaken assurance of coverage. Trustmark had been enjoined from denying coverage and stated that payment was guaranteed so as to "comply with the court's order."

UCH asserts that Trustmark made a promise to pay which created an independent contract. However, as stated in the letter from Trustmark's executive, "Benefit Trust Life Insurance Company will comply with the court's order and will cover charges for Mrs. Fuja's ABMT treatment." (emphasis added). UCH maintains that because Trustmark did not condition its payment pending an appeal, it created an independent contract. Although we agree that Trustmark did not place conditions on its payment, we do not believe the elements of a contract--offer, acceptance, and consideration--are present when one party is compelled by a court order to provide payment, as is the case here. In addition, even UCH concedes in its brief that Trustmark would want to appeal the district court's order to pay for the treatment as it created an unfavorable precedent that would obligate it to pay for similar kinds of treatment in future cases under the same or similar ERISA plans. As noted in Neurobehavioral Assocs., this disruption of the Plan and the potential effect on the pension rights of others fundamentally involves ERISA. 53 F.3d at 175. For these reasons, we cannot recharacterize the circumstances of the instant case as a breach of contract issue.

2. Estoppel

This circuit has recognized that estoppel principles can be applied to certain ERISA actions. Black v. TIC Inv. Corp., 900 F.2d 112, 115 (7th Cir. 1990), reaffirmed by Thomason v. Aetna Life Ins. Co., 9 F.3d 645, 650 (7th Cir. 1993); see also Coker v. Trans World Airlines, Inc., 165 F.3d 579, 584 (7th Cir. 1999) (finding that estoppel claim based on misrepresentations of insurer arises under the federal common law of ERISA). Black expressly limited the application of equitable estoppel principles to claims for benefits under ERISA unfunded, single-employer welfare benefit plans. 900 F.2d at 115. We note that Trustmark, as far as we can ascertain from the record, is an unfunded, single-employer welfare benefit plan.

Although the definition and elements of "estoppel" in the ERISA context have been varied, the court in Coker noted that four elements must always be present: (1) a knowing representation, (2) made in writing, (3) with reasonable reliance on that misrepresentation by the plaintiff, (4) to her detriment. 165 F.3d at 585; Black, 900 F.2d at 115. Where all four elements are present, the promise will be enforced in order to avoid injustice. See Evans v. Fluor Distributor Co., Inc., 799 F.2d 364, 366 (7th Cir. 1986) (citing Bank of Marion v. Robert "Chick" Fritz, Inc., 311 N.E.2d 138 (Ill. 1974)). In Coker, the court found that "factual questions such as whether [the defendant] misrepresented (either intentionally or negligently) to the Cokers any material facts about their coverage and whether the Cokers reasonably relied to their detriment on such misrepresentations," could not be resolved by interpreting an existing plan (in that case, a collective bargaining agreement). 165 F.3d at 584. The court determined that the estoppel case arose under federal common law of ERISA, not the collective bargaining agreement. Id.

The factual question in this case involves the reasonable reliance of UCH in receiving payment for the medical services provided. In addition, the written confirmation from Trustmark satisfies the rule which requires modification of ERISA plans to be in writing. 29 U.S.C. sec. 1102(a)(1). UCH asserts that it would not have accepted the financial risk of providing HDC/ABMT treatment to Mrs. Fuja had Trustmark not provided a guarantee, but would have sought alternative means to ensure that it would receive payment for services before rendering them. We find that the claim is properly before us, although we reemphasize the narrow scope of such claims. See Coker, 165 F.3d at 585.

Summary judgment is reviewed de novo. Feldman

v. American Memorial Life Ins. Co., 196 F.3d 783, 789 (7th Cir. 1999) (citation omitted). Summary judgment will be affirmed when, after viewing the record in the light most favorable to the nonmoving party, there is no genuine issue of material fact. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

UCH maintains that Trustmark is estopped from recovering the monies paid for Mrs. Fuja's HDC/ABMT treatment because of Trustmark's written (and oral) statements guaranteeing payment. Trustmark clearly promised payment notwithstanding the fact that it was paid "under court order." It is also logical that Trustmark knew or should have known that its promise to pay would induce action on the part of UCH, particularly based on the "urgency" of Mrs. Fuja's medical condition.

In determining whether an employer was entitled to a refund of payments in a restitution claim, the court in UIU Severance Pay Trust Fund v. United Steelworkers of America, 998 F.2d 509, 513 (7th Cir. 1993), stated that several factors should be considered: (1) were the unauthorized contributions the sort of mistaken payments that equity demands be refunded, i.e., was it a good faith mistake or the result of unauthorized activity? (2) has the employer delayed in bringing the action? (3) has the employer somehow ratified past payments? (4) can the employer demonstrate that the party from whom it seeks payment would be unjustly enriched if recovery were denied? Although we may find in favor of Trustmark in answering questions two and three, as to question one, it would have been easy for Trustmark to have made the payment conditional, stating that payment would be made subject to appellate review. However, in failing to do so, Trustmark misled UCH. As to question four, the matter of UCH's unjust enrichment is of great importance.

As discussed in Restatement of Restitution sec. 1, restitution is a device to avoid unjust enrichment. See also Central States Health & Welf. Fund v. Pathology Labs., 71 F.3d 1251, 1254 (7th Cir. 1995) (hereinafter "Pathology Labs."). In Pathology Labs., we noted that "[a] provider of medical care is not unjustly enriched by being paid the market fee for its services." Id. Although we recognize that Trustmark always insisted coverage for the HDC/ ABMT treatments was denied under the Plan, and paid for the treatments under court order, we cannot say that UCH does not have an honest claim to the money. UCH provided services at the market rate, was

paid for those services, and was not unjustly enriched.

In addition, we agree with the analysis in Rehabilitation Institute v. Group Adm's, 844 F. Supp. 1275, 1282 (N.D. Ill. 1994), particularly when applied to the health care sector, which stated that "the risk of loss from misstatement in the commercial arena ought to lie with the putative promisor, rather than with the party who justifiably relies on the erroneous promise." We find that Trustmark is estopped from seeking recovery of the unconditional payment made for Mrs. Fuja's HDC/ABMT treatment.

C.  Waiver of Copayments

Trustmark argues that UCH's waiver of Mrs. Fuja's copayment and deductible voids the insurance contract. See Kennedy v. Connecticut Gen. Life Ins. Co., 924 F.2d 698, 699 (7th Cir. 1991). However, Mrs. Fuja remained liable for those amounts, when she entered the hospital on January 7, 1993 for her HDC/ABMT treatments, by signing the Out-Patient Agreement and Authorization, which stated, "I understand that I am financially responsible to pay for my care, and that if my insurance does not pay the full amount due I will be responsible for the balance. This may include costs of collection and/or reasonable attorney's fees." Unlike the medical care provider in Kennedy, who perpetrated an ongoing scheme of fraud by waiving the copayment but raising the fee, 924 F.2d at 699, UCH's agreement held Mrs. Fuja ultimately legally responsible for any outstanding balance not covered by insurance.

D.  Attorney's Fees, Costs, and Prejudgment Interest

Trustmark maintains that it is entitled to attorney's fees under sec. 502(g)(1) of ERISA. See 29 U.S.C. sec. 1132 (g)(1). Section 502(g)(1) provides, "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." Our decision to reverse the district court's judgment means that Trustmark is no longer a prevailing party, and, therefore, is no longer entitled to an award of attorney's fees. Even had Trustmark remained the prevailing party, we agree with the district court's denial of attorney's fees, costs, and prejudgment interest. We have chosen to review the merits of this issue because we conclude that each party should bear their own attorney's fees and costs on appeal.

An award of attorney's fees is reviewed for an abuse of discretion. Filipowicz v. American Stores Benefit Plans Comm., 56 F.3d 807, 816 (7th Cir. 1995). "[A] district court's determination will not be disturbed if it has a basis in reason." Little v. Lux's Supermarkets, 71 F.3d 637, 644 (7th Cir. 1995) (citations omitted).

The general test for analyzing whether attorney's fees should be awarded to a party in an ERISA case after it has attained "prevailing party" status is: "[W]as the losing party's position substantially justified and taken in good faith, or was that party merely out to harass its opponent?" Quinn v. Blue Cross and Blue Shield Assoc., 161 F.3d 472, 478 (7th Cir. 1998) (citations omitted). In determining whether the losing party's position was "substantially justified," the Supreme Court has stated that a party's position is "justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565 (1988).

The district court determined that UCH had pursued its position in good faith, given the fact that this was not a typical ERISA misrepresentation. UCH knew Trustmark was under court order to provide coverage and was expressly told by Trustmark that it would pay for Mrs. Fuja's HDC/ABMT treatments. The district court found that when the order given Trustmark to pay for the coverage was reversed, UCH was "substantially justified" in asserting it was not required to reimburse the money for the treatments incurred. As the district court stated, such litigation "was not in any way designed to harass Trustmark."

Trustmark also acted in good faith. It was substantially justified in pursuing this action, given this court's reversal of the injunction. Trustmark was not merely harassing UCH. As we noted earlier, this was an unusual case. Both parties had legitimate claims, with no clear winner or loser.

Prejudgment interest may be appropriate in ERISA cases. Lorenzen v. Employees Retirement Plan of Sperry & Hutchinson Co., 896 F.2d 228, 236-37 (7th Cir. 1990). Prejudgment interest is designed not only to fully compensate the victim, but also to prevent unjust enrichment. Id. at 236. Whether to award prejudgment interest to an ERISA plaintiff is "a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities." Landwehr v. DuPree, 72 F.3d 726, 739 (7th Cir. 1995) (citations omitted). One of the factors considered in determining whether to award prejudgment interest is the presence of bad faith

or good will. Id. (internal quotations & citations omitted).

UCH received Trustmark's money as payment for medical services rendered. The district court found that UCH was not unjustly enriched by receiving payment for the treatments it provided to Mrs. Fuja. Nor did the fact that the appellate court determined the Plan did not cover the treatments indicate that UCH was guilty of wrongdoing or bad faith. We believe the district court acted within its discretion in denying Trustmark prejudgment interest. However, in this case, there is no evidence of bad faith on the part of either party.

For these reasons, we find that each party should bear its own attorney's fees and costs.

III.  CONCLUSION

We reverse the district court's finding of summary judgment in favor of Trustmark and note that each party shall bear its own attorney's fees and costs on appeal.


/1 Section 502(a)(3) states in relevant part: a civil action may be brought--

by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. 29 U.S.C. sec. 1132(a)(3).

Federal courts have exclusive jurisdiction over actions brought pursuant to the above provision. 29 U.S.C. sec. 1132(e).

/2 In Connors v. Amax Coal Co., Inc., 858 F.2d 1226, 1229 n.4 (7th Cir. 1988), the Seventh Circuit had previously stated in dicta, "Section 502(a)(3) does not apply to suits by fiduciaries to recover money that they paid to outside entities in violation of the terms of ERISA or the plan." In Connors, trustees of the United Mine Workers of America 1950 Benefit Plan and Trust sought reimbursement from Amax alleging that the company was liable, under the Black Lung Benefits Act, 30 U.S.C. sec. 901-45 ("BLBA"), for payments made for black lung-related medical expenses of miners who worked for Amax. Id. at 1227-28. The trustees brought suit against Amax in district court as subrogees to the miners' rights, alleging that the company had been unjustly enriched by the plan's payment of the black lung-related

expenses. Id. at 1228. This circuit affirmed the district court's dismissal for lack of subject matter jurisdiction, ruling that under the BLBA the trustees could only sue in district court to enforce a final compensation order obtained through prescribed procedures, which had not been followed. Id. The district court found that the trustees assertion of ERISA and federal common law was insufficient to confer subject matter jurisdiction. Id.

The Connors case is clearly distinguishable from the instant case. In Connors, the trustees of the plan were suing the employer. 858 F.2d at 1227. More importantly, the action in Connors was controlled by the BLBA, which created a preemption exception which occurs when a more specific statutory provision confers exclusive jurisdiction elsewhere and supersedes the application of sec. 1332. Id. at 1228.

COFFEY, Circuit Judge, concurring.  I write separately only to emphasize that I remain convinced that Trustmark was under no obligation to cover Grace Fuja's request for bone marrow treatment. See Fuja v. Benefit Trust Life Ins. Co., 18 F.3d 1405 (7th Cir. 1993). However, the fact remains that Trustmark made the decision and agreed to pay for the bone marrow transplant before this court published its decision without placing any conditions and/or qualification on the promise to pay. So although I am of the opinion, for the reasons stated previously in Fuja, supra, that Trustmark was not legally obligated to pay for the bone marrow transplant under the insurance contract, I agree with the majority's position that Trustmark, via its unqualified promise to pay, is now estopped from seeking recovery of the money it paid to UCH.