**FIRST HEALTH STRATEGIES (TPA), INC., Plaintiff,**

v.

**SECURITY LIFE OF DENVER INS. CO., et al., Defendants.**

No. Civ.A. 3:96–CV–3180P.

United States District Court, N.D. Texas, Dallas Division.

Oct. 9, 1997.

Gordon Kurt Wright, Carrington, Coleman, Sloman & Blumenthal, Dallas, TX, Thomas R. Lee, Kimball, Parr, Waddoups, Browm & Gee, Salt Lake City, UT, for plaintiff, First Health Strategies.

Mark Alan Goodman, David & Goodman, Dallas, TX, for defendant, Security Life of Denver Insurance Company.

Bruce A. Griggs, Jonathan Craig Falls, Strasburger & Price, Dallas, TX, for defendant, Medical City Dallas.

Dan C. Dargene, Winstead, Sechrest & Minick, Dallas, TX, for defendant, Coram Health Care Corp.

## MEMORANDUM OPINION AND ORDER

SOLIS, District Judge.

Now before the Court are Defendant Medical City's Motion to Dismiss and Alternative Motion to Stay, and Defendant Security Life's Motion to Stay and, alternatively, to Dismiss. Plaintiff has filed responses thereto and Defendants have replied. Having considered the argument and authorities presented, and the record, the Court hereby **GRANTS** Defendants' motions to dismiss.

### FACTUAL BACKGROUND

Plaintiff ("First Health") is a third-party administrator of health benefit claims submitted under the terms of various self-funded employee health plans. In that capacity, First Health receives claims for payment for medical services provided to employee-participants under the plan, and remits payments on behalf of the sponsor of the health plan in accordance with the terms of the applicable health plan. During 1994–95, First Health provided such services to Rangaire & Company ("Rangaire"), whose employee health plan (the "Plan") is self-funded to a certain level and is covered by "stop-loss" insurance, provided by Defendant Security Life, for claims in excess of that level.

Rangaire's Plan includes a lifetime benefit maximum of $1,000,000 for treatment of all physical conditions except AIDS. For AIDS-related claims, the Plan provides a lifetime benefit maximum of $25,000, with an annual benefit maximum of $10,000. In November of 1995, Rangaire filed a state-court action against First Health alleging that it paid benefits on behalf of a covered employee for treatment of AIDS in excess of the benefits available under the Plan. Specifically, Rangaire alleged that First Health made payments on behalf of one participant for at least $138,699.12. Rangaire seeks relief under tort and contract theories.

First Health asserted as defenses to the action (a) that Rangaire's claims are preempted by ERISA; (b) that the AIDS cap constitutes unlawful discrimination on the basis of disability in violation of the ADA; (c) that it processed the participant's claims in accordance with the terms of the Plan, and

(d) that most of the claims submitted and processed did not indicate that the treatment at issue was related to AIDS.

None of the Defendants in this action are parties to the state court action. In or about March 1995, First Health submitted excess medical expense claim forms to Security Life seeking coverage under the stop-loss policy for the participant's claims in excess of $50,-000. Security Life has refused coverage. In October 1995, First Health requested that Medical City return claims that had been paid for services rendered to the participant because such claims had been paid "under a mistake of fact"—i.e., under First Health's mistaken impression that the services rendered were for treatment unrelated to AIDS. Medical City has refused to return the funds.

On November 25, 1996, First Health filed its Original Complaint in this Court against Security Life, Medical City and Coram Health Care Corp. of North Texas ("Coram"), seeking declaratory relief as to rights arising under the Americans with Disabilities Act ("ADA") and the Employee Retirement Income Security Act of 1974 ("ERISA"). Specifically, First Health asks this Court to declare, against Security Life only, that the AIDS caps under the Rangaire Plan are unlawful, and that Security Life must, therefore, cover the participant's claims under its stop-loss policy whether they were AIDS-related or not. In the alternative, First Health requests the Court enter judgment declaring that Security Life must cover said claims because they were submitted for conditions with diagnoses other than AIDS.

As against the provider Defendants (Medical City and Coram), First Health seeks a judgment that Medical City and Coram have an obligation under ERISA to make restitution for any payments mistakenly made in violation of the Plan on the basis that the providers have been unjustly enriched thereby. On all counts, First Health alleges that

it has suffered and will suffer damages as a result of the parties' disagreement about their respective rights and obligations under the ADA and ERISA.

Medical City's motion to dismiss is premised on the assertion that First Health lacks standing under ERISA, and should be dismissed for failure to state a claim. In the alternative, Medical City urges the Court to stay this action pending the outcome of the state suit. Likewise, Security Life seeks a stay, and alternatively argues that the Court should dismiss First Health's claims herein as an improper use of the Declaratory Judgment Act.

### First Health's Standing

Medical City argues that because First Health is not an enumerated party under ERISA's civil enforcement provisions, it lacks standing to bring this action. *See* 29 U.S.C. § 1132(a) & (d); *Hermann Hospital v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1288–89 (5th Cir.1988). Medical City points out that First Health's complaint makes it clear that it is not suing on behalf of the Plan as a fiduciary, but rather on its own behalf for damages suffered and to be suffered.

First Health does not contest these assertions; instead, it argues that it has a federal common law right of restitution under ERISA pursuant to a purported "substantial body" of cases from this circuit recognizing such a right.[1] A close review of these cases, as well as others, leads the Court to the conclusion that no such right exists on the facts pled in First Health's complaint,.

■ It is clear that the federal courts are empowered to create federal common law under certain circumstances when adjudicating disputes regarding ERISA. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 457, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *Jamail*, 954 F.2d at 303; *Rodrigue*, 948 F.2d at 971; *Degan v. Ford Motor Co.*, 869 F.2d

---

1. First Health relies upon *Self–Insurance v. Korioth*, 993 F.2d 479 (5th Cir.1993); *Jamail, Inc. v. Carpenters Dist. Council*, 954 F.2d 299 (5th Cir.1992); and *Rodrigue v. Western and Southern Life Ins. Co.*, 948 F.2d 969 (5th Cir.1991) (and cases cited therein). Neither *Korioth* nor *Rodrigue* involve a federal common law right to restitution under ERISA. In addition, First

Health urges the Court to consider *Central States Health and Welfare Fund v. Neurobehavioral Associates*, 53 F.3d 172 (7th Cir.1995). This case is factually distinct as noted later in this Opinion. In addition, the *Neurobehavioral* court characterized the action before it as one between a fiduciary and a beneficiary, which are enumerated parties under ERISA.

889, 895 (5th Cir.1989). This power does not, however, allow the courts carte blanche to rewrite the legislation. *Jamail,* 954 F.2d at 304. It is the legislature which is empowered to make policy decisions underlying ERISA, and the courts must, therefore, be careful to remain faithful to such policy—i.e., it must be sure, in implementing policy, that it does not alter it. *See id.*

In those cases in which a federal common law right to restitution was found, certain common factual and policy-implementing threads are apparent. First, the cases involve equitable reimbursement from parties who were unjustly enriched in the true sense of the phrase—i.e., they "got something for nothing." For example, *Jamail* involved a trust fund which had received contributions from an employer which the employer was not required to make. *Id.* at 301. The receipt of these extra contributions was completely gratuitous; the funds supplied nothing in return. *Id.* Likewise, in *Neurobehavioral,* a medical provider was required to disgorge $9,900 of the $10,000 it had received pursuant to a clerical error in claims processing because it had submitted a claim for only $100 and was not entitled to capitalize, by windfall, on ministerial error. Restitution has been ordered when the defendant obtained benefits by **improper,** as opposed to merely erroneous, means. *See Provident Life & Accident Ins. Co. v. Waller,* 906 F.2d 985, 993 (4th Cir.1990), in which the court forced a plan participant to reimburse the plan for money advanced to him upon recovery of a judgment against the tortfeasor who caused his injuries, notwithstanding his failure to sign a written agreement thereto, because the participant was aware that the plan required that he sign such an agreement and the participant was not entitled to double recovery. The court noted that the participant should not be allowed to profit from his own wrongs. *Id. See also Health Cost Controls v. Wardlow,* 825 F.Supp. 152, 157 (W.D.Ky.1993), *aff'd,* 47 F.3d 1169 (6th Cir.1995) (denying restitution where the defendant did not obtain benefits by unjust conduct or deceit).

In the instant action, First Health has pled no facts to indicate that Medical City obtained its funds by deceit, unjust conduct, windfall or any other improper means. In contrast to the cases cited, Medical City appears to have provided services for the funds received. No party has contested that the value of the funds received exceeded the services supplied. Instead, the only basis upon which the Court is urged to require equitable restitution is First Health's allegedly erroneous claims processing.

In conclusion, the Court finds that the facts alleged in First Health's complaint do not state a federal common law right to restitution under ERISA. The Court, therefore, **DISMISSES** this action against Defendant Medical City.

### Should the Court Retain the Remaining Action?

Security Life moves the Court to stay this declaratory judgment action pending the outcome of Rangaire's first-filed state court action against First Health in which First Health raised as defenses the very issues for which it seeks this court's declaration and judgment. In support thereof, Security Life argues that a stay would prevent piecemeal litigation; that this forum is less convenient for Rangaire, a necessary party who would have to be joined to proceed; that this action was a later-filed action which both moving Defendants assert was prompted by forum-shopping; that Security Life will be forced to assert state law causes of action against Rangaire here if this matter goes forward; and that First Health will receive adequate protection in state court, where it has alleged as affirmative defenses the same claims which form the basis of this suit. In the alternative, Security Life urges the court to dismiss the action because it is an improper use of the Declaratory Judgment Act in light of the existence of the first-filed state action in which the issues can be fully litigated.

First Health contends that the Court must exercise jurisdiction in the absence of exceptional circumstances, which do not exist here.[2] It argues that by virtue of its ERISA restitution claim against Medical City, this Court has exclusive jurisdiction over its entire declaratory judgment action; that the presence of the ADA-related issue, which First Health argues is novel, complex and a

2. Both of the parties have followed the standards    set out in *Garber v. Sir Speedy, Inc.,* 930 F.Supp.

matter of first impression in this Circuit, alone weighs heavily against surrender of jurisdiction; that the state court action does not provide adequate protection because Security Life and Medical City are not parties thereto, and First Health has been unsuccessful in obtaining legal analysis from the state court regarding its ADA argument; that proceeding with the declaratory judgment action will not result in piecemeal litigation; that the federal forum is no less convenient to the parties than the state; and that First Health did not forum shop. Regarding dismissal, First Health contests that its declaratory judgment action is improper and points out that a dismissal (as opposed to a stay) is heavily disfavored.

As already noted, the Court applies the standards set out in *Wilton*, *Traveler's* and *Tandy* to resolve this issue, particularly in light of its ruling that First Health's ERISA-based restitution action is dismissed, leaving the Court with a declaratory judgment action regarding a federal statute over which it does not have **exclusive** jurisdiction.

■ It is well settled that a district court has discretion over whether to entertain a declaratory judgment action. *Wilton*, 515 U.S. at 287 (Declaratory Judgment Act is an enabling act which confers discretion upon courts rather than absolute right upon litigant); *Traveler's*, 996 F.2d at 778; *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991); *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 (5th Cir.1983); *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 663 n. 1 (5th Cir.1967) (Declaratory Judgment Act an authorization, not command).

■ Factors which the Court should consider in determining whether to stay or dismiss a declaratory judgment action include: 1) whether there is a pending state action in which all of the matters in controversy may

be fully litigated; 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; 3) whether the plaintiff engaged in forum shopping in bringing suit; 4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; 5) whether the federal court is a convenient forum for the parties and witnesses; and 6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy. *Traveler's*, 996 F.2d at 778.

■ Applying these factors, the Court finds that the pending state action adequately protects First Health's interests in its ADA claim; that the state action protects and adjudicates the claims of Rangaire, a necessary party in interest not before the Court here; and that no evidence has been presented that Security Life could not be joined in the state action. In addition, the evidence indicates that First Health filed this suit only after its motion for summary judgment in state court had been denied "without legal analysis," approximately 15 months after suit was commenced. Presumably, and the Court has been presented no evidence to the contrary, discovery has been had in the state action, something not true in the present action. More important, however, is the strong implication that this suit was filed to achieve a quicker or independent ruling on its ADA issue because First Health is unsatisfied with its efforts to date in state court. Using a declaratory judgment action to race to res judicata or to change forums is thoroughly inconsistent with the purposes of the Act and should not be countenanced. *Traveler's*, 996 F.2d at 777 n. 7. The Fifth Circuit has decided that when a state lawsuit is pending, more often than not, issuing a declaratory judgment will be tantamount to issuing an injunction—essentially providing the declaratory plaintiff an end run around

267 (N.D.Tex.1995), *aff'd* 91 F.3d 137 (5th Cir. 1996) which applied the factors set out in *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1191–93 (5th Cir.1988) which relied upon *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765, (1983). The Court takes direction from the Supreme Court's and the Fifth Circuit's subsequent, unequivocal position that

the stringent standards of *Colorado* and *Moses H. Cone* are inapplicable to decisions whether to stay declaratory judgment actions, as opposed to other federal actions. *See Wilton v. Seven Falls Company*, 515 U.S. 277, 289, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995); *Travelers Insurance Co. v. Louisiana Farm Bureau Federation, Inc.*, 996 F.2d 774, 778 n. 12 (5th Cir.1993); *Granite State Ins. Co. v. Tandy Corp.*, 986 F.2d 94, 95 (5th Cir.1992), *cert. dismissed*, 507 U.S. 1026, 113 S.Ct. 1836, 123 L.Ed.2d 463 (1993).

the requirements of the Anti–Injunction Act. *Id.* at 776.

The evidence indicates that, while there is no significant difference in convenience between the federal and state courts for First Health, Rangaire—a party in interest—would find the federal forum less convenient inasmuch as its employees and its records reside in Johnson County, the site of the state action.

Finally, the Court notes that inasmuch as the issues raised by First Health here have been raised defensively in the state action, judicial economy would not be served by retaining this action. Instead, it would appear to result in piecemeal litigation of the first-filed underlying state action. The Court therefore, **DISMISSES** First Health's action against Defendant Security Life.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that Plaintiff First Health's declaratory judgment action is **DISMISSED** in its entirety and that Cause No. 3:96–CV–3180–P is **CLOSED.**