**HEALTH CARE SERVICE CORPORATION,**
Plaintiff,

v.

**TAP PHARMACEUTICAL PRODUCTS, INC., Abbott Laboratories, and Takeda Chemical Industries, Ltd.,** Defendants.

Civil Action No. 1:03–CV–166.

United States District Court, E.D. Texas, Beaumont Division.

Aug. 1, 2003.

808

J. Hoke Peacock, III and Michael A. Lee of Susman Godfrey, LLP, Houston, TX, for Plaintiffs.

Lawrence Louis Germer and Kelli Burris Smith of Germer, Bernsen & Gertz, Beaumont, TX, for Defendants TAP Pharmaceutical Products, Inc.

Walter Joshua Crawford, Jr. of Crawford & Olesen, LLP, Beaumont, TX, for Abbott Laboratories.

Gene M. Williams of Mehaffy & Weber, Beaumont, TX, for Takeda Chemical Industries, Ltd.

## MEMORANDUM OPINION AND ORDER

RON CLARK, District Judge.

HCSC, an administrator of employer sponsored benefits plans, has moved to remand a suit in which it claimed defendant drug companies engaged in a pattern of overcharging for, and encouraging the over-prescription of, Lupron, a prostate drug [Doc. # 6]. This court must reject HCSC's claim that even though it is a plan administrator, it is not an ERISA fiduciary. If HCSC's allegations are correct, defendants are deemed to be fiduciaries of the plans from which they improperly obtained funds and are equitably required to disgorge these funds. Accordingly, this is a case of complete preemption of a suit to obtain equitable redress for an alleged prohibited practice under ERISA.

■ Additionally, if HCSC's allegations are true, potentially millions of dollars of overcharges on this single drug have been mulcted from plans paid for by employers, and intended to benefit hardworking employees and their dependents. The national policy implications for employees, employers, and benefit plans are multiplied if similar activity has occurred with other medications. No one can deny that protection of plan assets for the benefit of participants and beneficiaries was a central goal of Congress in enacting ERISA. HCSC's action for restitution due to defendants' unjust enrichment is governed by federal common law, and it "arises under" federal law for purposes of maintaining subject matter jurisdiction in this court. HCSC's motion to remand is denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 12, 2002, HCSC filed its Plea in Intervention (hereinafter referred to as HCSC's "Complaint") in a state court class action in which individuals were suing defendants TAP, Abbott and Takeda Chemical Industries ("Takeda") for allegedly promoting unnecessary prescriptions, and overcharging for a drug called Lupron. HCSC alleged that through its divisions (various Blue Cross and Blue Shield organizations), it was the third-party payor of many of the alleged unnecessary or inflated charges for Lupron.

On that same day, the State District Court severed HCSC's claims, resulting in a new action with HCSC as the only plaintiff, and TAP, Abbott, and Takeda as defendants. HCSC alleges state law claims of civil conspiracy, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, unjust enrichment, fraud, and violation of the Illinois Antitrust Act. Six months after HCSC filed its Complaint, and four months after defendants had answered, TAP served HCSC with discovery. The response to the discovery was received by defendants on February 18, 2003. Defendants filed their Notice of Removal [Doc. # 1] on March 20, 2003. HCSC has moved to remand asserting federal preemption does not apply and that the notice of removal was filed too late.

## II. PREEMPTION OF STATE LAW CLAIMS

Although HCSC's Complaint purported to raise only state law causes of action,

defendants removed this case by invoking federal jurisdiction under the Employee Retirement Income Security Act of 1974 ("ERISA"), §§ 502, 514, 29 U.S.C. §§ 1132, 1144.[1] An action filed in state court may be removed to federal court if the claim is one "arising under" federal law. *See* 28 U.S.C. § 1441(b).

■ Under the well-pleaded complaint rule, a case does not "arise under" federal law and is not removable if the complaint asserts only state law causes of action. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). An anticipated federal defense, including a defense of preemption, will not support removal either. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

### A. Claims Under ERISA 29 U.S.C. § 1132(a) Are Preempted

■ State law claims that seek relief within the scope of the civil enforcement provisions of ERISA § 502(a), 29 U.S.C. § 1132(a), can be characterized as claims arising under federal law. *See Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 64–66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). A federal court has "complete preemption" jurisdiction over such claims, and the action can properly be removed to federal court.[2] *Arana v. Ochsner Health Plan,* 338 F.3d 433 (5th Cir.2003)(citing *Metro. Life Ins. Co. v. Taylor,* 481 U.S. at 66).

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), provides:

A civil action may be brought—

\* \* \*

(3) by a ... *fiduciary* ... (A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) *to obtain other appropriate equitable relief (i) to redress such violations* or (ii) to enforce any provisions of [ERISA] or the terms of the plan.... (Emphasis added).

As will be discussed, HCSC, as a plan administrator, is a fiduciary. This suit seeks to obtain equitable relief to redress violations of the "prohibited transactions" provisions of ERISA, 29 U.S.C. § 1106. The claims are therefore within the scope of 29 U.S.C. § 1132 and complete preemption jurisdiction applies.

### 1. HCSC is an ERISA Fiduciary

The court must determine the status, under ERISA, of HCSC and defendants to determine whether the action brought is, in reality, one to redress violations of ERISA, or to enforce any provisions of ERISA. If HCSC is a fiduciary, and its suit redresses transactions prohibited by ERISA, then this is a case arising under Federal law and removal was proper.

■ ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), defines a fiduciary as follows:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises

---

1. If the state court claims relating to ERISA accounts are removable, this court has supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(a)("[T]he district courts shall also have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy....").

2. The Fifth Circuit has recently held that "conflict preemption," also known as ordinary preemption, under ERISA § 514, 29 U.S.C. § 1144, is no longer required to find complete preemption jurisdiction. *Arana v. Ochsner Health Plan,* 338 F.3d 433 (5th Cir.2003)(holding that only complete preemption of a claim under the civil enforcement provisions of ERISA § 502(a), 29 U.S.C. § 1132(a), is required for removal jurisdiction).

any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

The term "fiduciary" is liberally construed in keeping with the remedial purpose of ERISA. *Am. Fed. of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc'y of the U.S.*, 841 F.2d 658, 662 (5th Cir.1988).

■ HCSC is a fiduciary. HCSC admits that it provides health insurance through its Blue Cross and Blue Shield divisions, and that those divisions "administered self-funded plans, or provided coverage through employer-sponsored benefit plans"—activities at the "core" of Blue Cross and Blue Shield. (Mot. to Remand at 5, n. 1; *see also* HCSC Resp. to TAP's First Set of Interr. ¶¶ 1, 8.) HCSC asserts that it "seeks recovery of monetary damages from overpaying" for Lupron—overpayments which were obviously made from the self-funded plans which HCSC administers. (Mot. to Remand at 13.) Remarkably, however, HCSC denies that it brings its claims for damages on behalf of those same self-funded plans which suffered as a result of the above overpayments. Moreover, HCSC opines that "[j]ust because [it] may act as a plan fiduciary in carrying out some of its administrative functions in no way means that it acts as a plan fiduciary in all of its functions." (HCSC's Reply to Defs.' Resp. to HCSC's Mot. to Remand at 8, n. 6.)

HCSC's argument is untenable, and the court is not persuaded. "ERISA's duty of loyalty is the highest known to the law." *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 294 (5th Cir.2000). "Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior" of a fiduciary. 223 F.3d at 294 (citing *Meinhard v. Salmon*, 249 N.Y. 458, 164 N.E. 545, 546 (1928))(Cardozo, J.).

The Supreme Court recognized the source of ERISA's duty of loyalty in the common law of trusts and noted that even where a fiduciary may "wear two hats," ERISA requires that the fiduciary "wear the fiduciary hat when making fiduciary decisions." *Pegram v. Herdrich*, 530 U.S. 211, 120 S.Ct. 2143, 2151–52, 147 L.Ed.2d 164 (2000). The election of HCSC, as a. plan administrator, to recover plan funds wrongfully paid out is a fiduciary decision and requires that HCSC performs that duty solely in the interest of the plan's participants and beneficiaries—not in the interest of HCSC. "[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1)(A).

By analogy, the duty of utmost loyalty HCSC has to its plan beneficiaries is similar to the duty of loyalty a guardian of an estate has to a minor. Consider the following scenario: a child requires medical care for the treatment of cancer and the guardian pays the medical bills from the child's estate. After the child's treatment ends, the guardian discovers that a third party wrongfully overcharged the child's estate for cancer drug treatments, and sues the third party to recover the overpayments. It would be an almost criminal breach of fiduciary duty for the guardian to claim that he was not bringing suit on behalf of the child's estate—but on his own behalf—simply because payments for medical treatment had ceased. HCSC provides no evidence of how it has ceased to be a fiduciary in this action simply because certain plan payments for the drug Lupron have ceased. Any awards from this action need to go back into the employers health care plans for the benefit of employees—

not into the administrator's coffers. Therefore, HCSC is an ERISA fiduciary within the meaning of 29 U.S.C. § 1002(21)(A).

## 2. HCSC Suit Seeks to Redress ERISA Violations by Defendants

The Supreme Court has held that a fiduciary may bring an action for restitution against a transferee of tainted plan assets and that such action constitutes "appropriate equitable relief" under the civil enforcement provisions of 29 U.S.C. § 1132(a)(3). *Harris Trust and Savings Bank v. Salomon Smith Barney,* 530 U.S. 238, 253, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000). If defendants obtained plan assets by means of a "prohibited transaction" as defined by the Act, then this is a suit for appropriate equitable relief.

### a. Defendants are Fiduciaries and Parties in Interest

■ 29 U.S.C. § 1106, "Prohibited Transactions," prohibits certain acts by fiduciaries and parties in interest. ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), provides that "a person is a fiduciary with respect to a plan to the extent (i) he ... exercises any ... control respecting ... disposition of its assets." Under ERISA, "fiduciary" is described in terms of function rather than form. *See Mertens v. Hewitt Assocs.,* 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)(ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan....").

■ HCSC asserts that it and "many thousands of individuals have sustained monetary damages" because defendants induced overcharges and unwarranted prescriptions for the drug Lupron. (HCSC Complaint ¶ 2.) Defendants allegedly have a "nationwide practice of selling Lupron at inflated prices" and were unjustly enriched by retaining a "profit from HCSC through

fraud, duress, or the taking of an undue advantage." (HCSC Complaint ¶¶ 28, 32.) Clearly, in functional terms, defendants kept and exercised control over the disposition of plan assets that they are alleged to have wrongfully obtained. Therefore, defendants, are fiduciaries under 29 U.S.C. § 1002(21)(A). As ERISA fiduciaries, defendants have a duty to return plan assets obtained by overcharging for drug treatments, and HCSC has a duty to protect the plan assets from being overcharged. If HCSC's allegations of systematic overcharging and overprescribing are true, this court cannot ignore the actual relationship of HCSC and defendants to the plan, and the duties imposed on them as fiduciaries.

■ Additionally, ERISA defines a "party in interest" in relevant part as "any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of [an] employee benefit plan" or "a person providing services to such plan." ERISA § 3(14)(A)-(B), 29 U.S.C. § 1002(14)(A)-(B). Defendants, through contracts with HCSC or its various Blue Cross Blue Shield Divisions to supply medications to plan participants, beneficiaries, or to health care providers, can be considered "a person providing services to such plan" under 29 U.S.C. § 1002(14)(B). This makes them a "party in interest" under § 1002(14).

### b. Defendants' Alleged Wrongdoing is a Prohibited Transaction

ERISA prohibits fiduciaries and parties in interest from engaging in certain transactions, unless there is an exemption that allows the transaction. *See* ERISA § 406, 29 U.S.C. § 1106 (entitled "Prohibited transactions"); *see also* ERISA § 408(b), 29 U.S.C. § 1108(b)(entitled "Exemptions from prohibited transactions").

ERISA § 406, 29 U.S.C. § 1106, provides:

**(a) Transactions between plan and party in interest**

Except as provided in section 1108 of this title:

(1) A *fiduciary* with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

* * *

(D) transfer to, or use by or for the benefit of, a *party in interest*, of any assets of the plan.... (Emphasis added.)

* * *

**(b) Transactions between plan and fiduciary**

A fiduciary with respect to a plan shall not—

(1) deal with the assets of the plan in his own interest or for his own account,

(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or

(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

29 U.S.C. §§ 1106(a)(1)(D), 1106(b)(1)-(3).

Here, defendants are "parties in interest" because they are fiduciaries and, alternatively, because their ongoing arrangements to provide medication to plan participants and beneficiaries constitute providing of services under 29 U.S.C. § 1002(14)(B).

■■■ Just like the trustee in *Harris Trust*, HCSC, as a plan fiduciary, caused the plan to engage in transactions which it knew, or should have known, constituted the improper transfer of plan assets to defendants, as parties in interest. *See Harris Trust and Savings Bank*, 530 U.S. at 240, 120 S.Ct. 2180. As a health care plan administrator experienced in the pricing and reporting practices of pharmaceutical companies, HCSC knew, or should have known, after the "many hundreds of occasions" it paid inflated charges for Lupron, that it was transferring improperly gained plan assets to defendants. ERISA provides no exemptions from such prohibited transactions. *See* ERISA § 408(b), 29 U.S.C. § 1108(b). Thus, this action is brought to redress violations of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), pursuant to 29 U.S.C. § 1132(a)(3). A fiduciary not only may, but should, maintain an action to recover plan assets, even if the suit is based on the fiduciary's own mistake or wrongdoing. *See Harris Trust and Savings Bank*, 530 U.S. at 240, 120 S.Ct. at 2184, 120 S.Ct. 2180.

■■■ Alternatively, HCSC's complaint alleges facts, which if true, show that defendants, as fiduciaries with respect to the plan, violated ERISA § 406(b)(1)-(3), 29 U.S.C. § 1106(b)(1)-(3), concerning transactions between the plan and the fiduciaries. The complaint alleges that defendants (1) dealt with the assets of the plan for their own interest or account by overcharging for Lupron; (2) acted in transactions involving the plan on behalf of parties whose interests are adverse to the interests of the plan by engaging in a conspiracy to inflate Lupron prices, and (3) received consideration for their own accounts from parties dealing with the plan, its participants, or its beneficiaries in connection with transactions involving plan assets when they accepted payments for Lupron for which providers were overcharged. Therefore, this action is a suit brought to redress violations of ERISA § 406(b), 29

U.S.C. § 1106(b), pursuant to 29 U.S.C. § 1132(a)(3).

### c. Suit Seeks Equitable Relief

 Among its state law claims, HCSC asserts a claim for unjust enrichment. (HCSC Complaint ¶ 32.) HCSC seeks *"recovery of monetary damages from overpaying or unnecessarily paying for Lupron."* (Mot. to Remand at 17.)(Emphasis added.) "HCSC has a substantial legal and *equitable* interest in the matters in controversy in this litigation, in that it too has paid inflated or unnecessary charges for Lupon." (HCSC Complaint ¶ 16.)(Emphasis added.) Notwithstanding their assertions to the contrary, HCSC clearly seeks restitution in equity from defendants for overpayments for Lupron. Restitution in equity is a "form of constructive trust or equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Great–West Life & Annuity Ins. Co. ("Great–West") v. Knudson,* 534 U.S. 204, 213, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). "[F]or restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to *restore to the plaintiff* particular funds or property in the defendant's possession." *Great–West,* 534 U.S. at 214, 122 S.Ct. 708.

In *Great–West,* an action for equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), was brought by Great–West against Knudson, a beneficiary of an ERISA-governed employee welfare benefit plan, who was injured in a car accident. Under the plan, Great–West paid Knudson's medical expenses of $411,157 and she was to reimburse Great–West if she recovered damages from any third party tortfeasors. Knudson recovered a $650,000 settlement in a tort action against Hyundai. When Great–West was only reimbursed for $13,828, it filed suit seeking enforcement of the reimbursement provisions of the plan. The Court noted that "the basis of [Great–West's] claim is not that respondents hold particular funds that, in good conscience, belong to [Great–West], but that [Great–West is] *contractually* entitled to some funds for benefits that they conferred." *Great–West,* 534 U.S. at 214, 122 S.Ct. 708. (Emphasis added.) "The kind of restitution that petitioners seek, therefore, is not equitable—the imposition of a constructive trust or equitable lien on particular property—but legal—the imposition of personal liability for the benefits that they conferred upon respondents." *Id.* The Court held that the relief sought by *Great–West* did not constitute "equitable relief" under ERISA § 502(a)(3).

The facts of the instant case are distinguishable from *Great–West.* First, *Great–West* involves an insurance company seeking contractual reimbursement from a beneficiary under a plan provision. Here, HCSC, a corporate health plan administrator of its multiple divisions of Blue Cross Blue Shield, is seeking to recover plan funds allegedly misappropriated by the defendant pharmaceutical companies. The central goals of ERISA would be furthered by maintaining this action in federal court. *See Massachusetts Life Ins. Co. v. Russell,* 473 U.S. 134, 140 n. 8, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)("The crucible of congressional concern was misuse and mismanagement of plan assets by plan administrators.").

Additionally, the basis for this suit is the "recovery of monetary damages from overpaying" plan assets for Lupron. (Mot. to Remand at 13.) In order to prove its damages, HCSC will have to identify the illegally obtained funds and trace them back to particular funds in the defendants' possession by, for example, identifying each plan member who was overcharged and tracing their billing and payment pro-

cess for Lupron under the plan back to the defendants. By doing so, HCSC would be, in effect, seeking to have a constructive trust imposed on defendants in the amount of the wrongfully obtained funds. As HCSC stated, "[d]efendants have been unjustly enriched and possess funds that in good conscience and equity belong to HCSC." The court would add "acting on behalf of the self-funded group health plans." Thus, ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) is applicable because HCSC seeks to obtain equitable relief to redress violations of ERISA provisions.

### B. Claims Under Federal Common Law are Preempted

 Even if § 1132(a)(3) were not applicable to HCSC's claims, it is well settled that " § 1331 jurisdiction will support claims founded upon federal common law as well as those of statutory origin." *Provident Life and Accident Ins. Co. v. Waller*, 906 F.2d 985, 988 (4th Cir.1990). However, 'arising under' jurisdiction established under ERISA federal common law exists only where the issue in dispute is of central concern to the federal statute. 906 F.2d at 990. The Fifth Circuit has recognized that a federal common law right of restitution is available under ERISA to recover the overpayment of benefits. In *Jamail, Inc. v. Carpenters District Council of Houston Pension & Welfare Trusts*, 954 F.2d 299 (5th Cir.1992), the court explained:

Both the legislative history and the case law pursuant to ERISA validate our application of federal common law to ERISA. The legislative history explains that due to the broad preemption provisions, "a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans." The case law pertaining to ERISA also supports the application of common law to the statute. We have

recently said: "Congress intended that federal courts should create federal common law when adjudicating disputes regarding ERISA." (Citation omitted.) *Jamail, Inc.*, 954 F.2d at 303.

The creation of a common law right of restitution furthers ERISA's purposes. *Jamail, Inc.*, 954 F.2d at 305. In the cases in which a federal common law right to restitution was found, "certain common factual and policy-implementing threads are apparent." *First Health Strategies (TPA) Inc. v. Sec. Life of Denver Ins. Co.*, 998 F.Supp. 712 (N.D.Tex.1997). First, the cases involved parties who were unjustly enriched because they retained money or property of another against the fundamental principles of justice or equity and good conscience. For example, in *Central States Health and Welfare Fund v. Neurobehavioral Assoc.*, 53 F.3d 172 (7th Cir.1995), when a medical provider submitted a $100 claim, but received $10,000 because of a clerical error in claims processing, it was required to disgorge $9,900 of the $10,000. The goal of the ruling was to prevent the provider from unjustly profiting from the mistake and to preserve the integrity of ERISA-governed funds. *Central States Health and Welfare Fund*, 53 F.3d at 175.

Second, the cases concerned defendants against whom restitution had been ordered because they obtained benefits by improper, as opposed to merely erroneous, means. In *Provident Life & Accident Ins. Co.*, 906 F.2d at 993, when a plan participant knowingly received double recovery on his policy because he failed to sign a reimbursement agreement, the court noted that he should not be allowed to profit from his own wrongs.

 Here, it is undisputed that defendants received the funds at issue and HCSC has alleged facts showing that defendants obtained the funds by unjust, de-

ceptive, unlawful and other improper means. HCSC asserts that "[d]efendants have been unjustly enriched and possess funds that in good conscience and equity belong to HCSC" and that it "seeks the amount that each Defendant was unjustly enriched by their inequitable conduct." HCSC Complaint ¶ 32. In other words, as a remedy for defendants' use of plan funds for their own unjust enrichment, HCSC seeks equitable restitution. As such, HCSC has stated a federal common law right to restitution under ERISA and subject matter jurisdiction in this court is proper.

## III. TIMELINESS OF REMOVAL

HCSC also moves to remand asserting that defendants exceeded the thirty day deadline for removal. However, HCSC's initial pleading did not disclose that it was suing as administrator for plans covered by ERISA. Once that was determined by discovery, defendants timely removed.

### A. *Fifth Circuit's Bright Line Test for Timely Removal*

A defendant must remove an action within thirty days of receipt of a pleading which sets out a case which is removable, i.e., which involves a federal question or is between parties of diverse citizenship. 28 U.S.C. § 1446(b). "If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable...." 28 U.S.C. § 1446(b).

The issue here is whether the case stated in HCSC's initial pleading was removable, or whether a discovery response filed seven months later was the first time it could be ascertained that the case was removable. In the Fifth Circuit, the thirty day rule starts to run upon receipt of an initial pleading only if that pleading "affirmatively reveals on its face" the necessary federal jurisdictional requirements. *See Bosky v. Kroger Texas, LP*, 288 F.3d 208, 210 (5th Cir.2002). Amended pleadings and other papers must be "unequivocally clear and certain" to trigger the removal time limit. 288 F.3d at 211. This "bright line" approach is taken to discourage time consuming and wasteful "protective removals" before the basis for removal can be easily proven by a simple and short statement of the facts. 288 F.3d at 211. The rule is applicable whether removal is based upon diversity or federal question jurisdiction. *See Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521 (5th Cir.1994).

Commentators have noted the split of authority among the circuits on this issue, and the inclination of some District Courts to adopt a more expansive view. *See* WILLIAM W. SCHWARZER, ET AL., FEDERAL PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL 2D–156 - 2D–156.3 (2003); William D. Underwood, *Federal Court Jurisdiction and Removal of Civil Actions* (Federal Court Practice, State Bar of Texas Continuing Legal Education Program) at 20 (2002). HCSC cites several district court decisions in which the court held that removal was not timely. While these decisions are instructive, each case is different, and the clear rules set out by the Fifth Circuit must be applied only after careful examination of the factual and procedural background of the present case.

### B. *Removal Was Timely*

On September 5, 2002, TAP filed an answer which, among a laundry list of twenty-four affirmative defenses stated:

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's Petition and each purported cause of action set forth therein against Defendant TAP are barred to the extent they are preempted by federal law, including without limitation the Federal Employee Retirement Income and Security Act of 1974, the Federal Medicare Act, and the Federal Medicaid Act, including all amendments to the same and all regulations promulgated thereunder.

Abbott's Answer also filed on September 5, stated as one of its six affirmative defenses: "Plaintiff's claims are preempted by federal law."

Some six months after HCSC filed its Complaint, and four months after Defendants had answered, TAP served HCSC with discovery. The response to the discovery was received by Defendants on February 18, 2003. In response to the first request for admissions, HCSC stated: "HCSC admits in part that it provides a portion of its health care coverage through plans that are provided to members through employer-sponsored benefit plans." Defendant's motion to remove was filed on March 20, 2002, which is within 30 days of the receipt of the admissions.

HCSC's Complaint does not on its face state that it provided coverage through, or was otherwise involved in, employer-sponsored benefit plans. HCSC points to no other federal question apparent on the face of its pleadings. TAP's answer raises, as one of twenty-four affirmative defenses, what might be called a "conditional plea" of preemption asserting that HCSC's claims are barred "to the extent they are preempted by federal law. . . ." Abbott directly asserts as one of six affirmative defenses that HCSC's claims are preempted by federal law. However, Texas courts are traditionally very liberal in permitting parties to set out all conceivable claims and defenses in their initial pleadings, re-lying upon special exceptions to winnow out defects, omissions, obscurity, duplicity, and generality. *See* Tex.R. Civ. P. 91. It would not be surprising that an initial pleading was based on a good faith supposition that was expected to be confirmed or denied by discovery. Abbott's direct statement about unspecified federal law is not as artful as TAP's in this regard, but would probably not be considered "groundless" for purposes of sanctions even if Abbott had no solid evidence that some federal law likely applied.

More importantly, under the Fifth Circuit's bright line approach, could Abbott or TAP remove based on HCSC's complaint or upon the mere statements made in their own answers? Since at least 1992, a consistent string of Fifth Circuit decisions indicates they could not. *See Chapman v. Powermatic, Inc.,* 969 F.2d 160 (5th Cir. 1992) and cases citing the same. Even a second removal on the same theory has been allowed where facts which were clearly known to Defendant were confirmed in a later deposition which constituted a new paper under 28 U.S.C. § 1446. *S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 494 (5th Cir.1996). Based upon this consistent precedent, the court holds that the notice of removal was timely.

## IV. CONCLUSION

It is therefore **ORDERED** that Health Care Service Corporation's Motion to Remand [Doc. # 6], is hereby **DENIED.**